Argued and submitted September 27, 2010, affirmed on petition and cross-petition December 7, 2011

In the Matter of the Compensation of
Carla McCoy (Morgan), Claimant.

DEPARTMENT OF CONSUMER
AND BUSINESS SERVICES,
*Petitioner*
*Cross-Respondent,*

*v.*

ZURICH AMERICAN
and Northwest Staffing Services,
*Respondents*
*Cross-Petitioners,*

*and*

SEDGWICK CLAIMS MANAGEMENT SERVICES
and On-Time Delivery,
*Respondents.*

Workers' Compensation Board
0605131, 0600028NC; A142315

268 P3d 671

Karla H. Ferrall, Assistant Attorney General, argued the cause for petitioner - cross-respondent. With her on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Ehren J. Rhea argued the cause for respondents - cross-petitioners. On the briefs were David L. Johnstone and VavRosky MacColl, P.C.

Russell Allen waived appearance for respondent On-Time Delivery.

No appearance for respondent Sedgwick Claims Management Services.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

The Department of Consumer and Business Services (DCBS) petitioned for judicial review of an order of the Workers' Compensation Board that rejected a proposed DCBS order declaring On-Time Delivery, LLC (On-Time), to be a noncomplying employer under ORS 656.052 and that awarded attorney fees against DCBS in favor of On-Time. Zurich American Insurance Company (Zurich) cross-petitioned for review of the board's order, challenging the board's conclusion that Zurich is responsible for paying workers' compensation benefits to On-Time's injured employee. We reject the parties' challenges to the board's order and, accordingly, affirm on the petition and cross-petition.

Claimant suffered injuries in an automobile accident while delivering documents for On-Time and filed a claim for compensation. About a week before the accident, On-Time had entered into a contract with Northwest Staffing Services (NW Staffing)—a worker-leasing company for which Zurich provided workers' compensation insurance—pursuant to which NW Staffing became the employer of On-Time's permanent office staff and leased those employees back to On-Time.[1] However, NW Staffing did not file with the Director of DCBS (director) the notice required by OAR 436-050-0410 that documented its worker-leasing arrangement with On-Time.[2] Because On-Time was not a self-insured employer and had not filed at the time of claimant's accident

---

[1] A worker-leasing company hires workers and leases them to clients to perform work for the clients under a contract and for a fee. ORS 656.850(1)(a). The worker-leasing company generally agrees, among other things, to assume responsibility for paying payroll and employment taxes and for providing workers' compensation insurance for its employees as part of the fee. Importantly, a worker-leasing company does not lease workers to a client on a temporary basis, *viz.*, it does not provide "workers to a client for special situations such as to cover employee absences, employee leaves, professional skill shortages, seasonal workloads and special assignments and projects with the expectation that the position or positions will be terminated upon completion of the special situation." ORS 656.850(1)(a), (b).

[2] OAR 436-050-0410(1) provides, in part:

"Within 14 days after the effective date of the lease arrangement or contract, a worker leasing company must file written notice with the director and its insurer * * * that it is providing leased workers to a client and workers' compensation coverage."

proof that it had workers' compensation insurance for its subject workers, as required by ORS 656.017(1) and ORS 656.407(1),[3] the director issued a proposed order declaring On-Time to be a noncomplying employer under ORS 656.052 and, as a result of that determination, assessing a civil penalty against the company.[4] The director then referred claimant's workers' compensation claim to Sedgwick Claims Management Services, Inc. (Sedgwick), for processing on On-Time's behalf. *See* ORS 656.054(1) (providing for such a referral).

Based on its belief that claimant was an independent contractor and, therefore, not a subject worker for whom On-Time had to file proof of insurance coverage, On-Time requested a hearing to contest the director's proposed determination that it was a noncomplying employer. At the time of that request, On-Time believed that NW Staffing was obligated to provide workers' compensation insurance only for On-Time's leased office staff, which did not include claimant. Thereafter, Sedgwick sent claimant and On-Time an initial notice of acceptance of claimant's claim. In response, On-Time requested a hearing to challenge Sedgwick's

---

[3] ORS 656.017(1) provides:

"Every employer subject to this chapter shall maintain assurance with the [director] that subject workers of the employer and their beneficiaries will receive compensation for compensable injuries as provided by this chapter and that the employer will perform all duties and pay other obligations required under this chapter, by qualifying:

"(a) As a carrier-insured employer; or

"(b) As a self-insured employer as provided by ORS 656.407."

ORS 656.407(1) provides, as relevant:

"An employer shall establish proof with the [director] that the employer is qualified either:

"(a) As a carrier-insured employer by causing proof of coverage provided by an insurer to be filed with the director[.]"

[4] ORS 656.052 provides, as relevant:

"(1) No person shall engage as a subject employer unless and until the person has provided coverage pursuant to ORS 656.017 for subject workers the person employs.

"(2) Whenever the [director] has reason to believe that any person has violated subsection (1) of this section, the director shall serve upon the person a proposed order declaring the person to be a noncomplying employer and containing the amount, if any, of civil penalty to be assessed pursuant to ORS 656.735(1)."

compensability determination as reflected in the acceptance. Two days after the acceptance, On-Time sent NW Staffing a letter expressing its belief that, because NW Staffing was statutorily required to provide workers' compensation insurance coverage for On-Time's subject workers, including claimant, NW Staffing was responsible for defending claimant's workers' compensation claim—a conclusion that NW Staffing rejected. Based on its responsibility conclusion, On-Time moved under ORS 656.740(3) to join Zurich, NW Staffing's workers' compensation insurer, in the noncompliance proceeding as a necessary party, and the motion was granted.

On-Time's challenges to the director's noncompliance determination and to Sedgwick's compensability determination were heard together by an administrative law judge (ALJ). After the hearing, the ALJ issued an order that concluded, among other things, that (1) claimant was not an independent contractor and, consequently, was a subject worker for purposes of the Workers' Compensation Law; (2) claimant has a compensable claim; (3) because claimant was a subject worker and On-Time had not timely filed proof of workers' compensation insurance with the director, the director correctly determined that On-Time was a noncomplying employer; (4) NW Staffing is statutorily responsible through ORS 656.850 for providing workers' compensation insurance for claimant even though claimant was not leased to On-Time by NW Staffing, and, consequently, Zurich, as NW Staffing's insurer, is responsible for paying the compensation due claimant on her claim; and (5) Zurich's responsibility for the claim includes not only paying future compensation due claimant but also reimbursing under ORS 656.054 the costs that Sedgwick had incurred in processing the claim.[5]

Zurich appealed to the board, arguing that, although the ALJ may have correctly determined that NW Staffing had a statutory obligation to provide workers' compensation

_____

[5] As explained more fully below, 246 Or App at 710, under ORS 656.054, the director uses the Workers' Benefit Fund to reimburse an assigned claims agent for the costs that it incurs in processing a claim for a noncomplying employer. The noncomplying employer must then reimburse the Workers' Benefit Fund for the amount that the director has paid the assigned claims agent.

insurance for claimant, the ALJ nonetheless lacked authority to shift responsibility for paying compensation from Sedgwick to it and to order Zurich to reimburse Sedgwick for the costs that Sedgwick had already incurred in processing the claim.[6] Moreover, as to the shift of responsibility for paying prospective benefits, Zurich contended that, because Sedgwick was required to process the claim under ORS 656.054 as if the claim had been made by a subject worker of a carrier-insured employer, and Sedgwick had accepted the claim without denying responsibility for it, Sedgwick—acting, in effect, as an insurer—had waived its ability to deny responsibility for the claim. Therefore, Sedgwick's acceptance precludes a shift of responsibility for the claim to Zurich.

The board issued a final order on appeal from the ALJ's order. In it, the board concluded that, because NW Staffing was a worker-leasing company, it—and, hence, Zurich—was statutorily responsible for providing workers' compensation insurance for claimant, and, therefore, On-Time was not a noncomplying employer. As a result of that conclusion, the board reversed the director's order declaring On-Time to be a noncomplying employer.

With respect to the ALJ's responsibility determination, the board rejected Zurich's arguments against shifting responsibility for the claim from Sedgwick to Zurich, concluding that Zurich must accept the claim and process it in Sedgwick's stead. However, with respect to the ALJ's reimbursement determination, the board concluded, pursuant to ORS 656.307 and its analysis in *Rual E. Tigner*, 42 Van Natta 2643, 2645 (1990)—*viz.*, the board's jurisdiction is limited to matters concerning a claim and a reimbursement dispute among insurers is not a matter concerning a claim—that it lacked authority to order Zurich to reimburse Sedgwick for the costs that Sedgwick had incurred in processing claimant's claim.

DCBS seeks judicial review of the board's order, challenging the board's conclusions (1) that On-Time was not

---

[6] Zurich did not challenge the ALJ's conclusions regarding the compensability of claimant's claim.

a noncomplying employer, (2) that DCBS rather than Zurich is required to pay On-Time's attorney fees for prevailing against the director's designation of On-Time as a noncomplying employer, and (3) that the board lacks authority to require Zurich to reimburse Sedgwick for the costs incurred by Sedgwick in processing claimant's workers' compensation claim. Zurich cross-petitions, renewing its argument that, by accepting claimant's claim without denying responsibility for it, Sedgwick effectively waived its ability to deny responsibility for the claim and, therefore, that the board erred in shifting responsibility for the claim from Sedgwick to Zurich.

The question that we must first address is whether On-Time or NW Staffing is the proper employer for the director's noncompliance determination. We begin with a brief discussion of the steps that lead to a noncompliance determination and the consequences of that determination.

An employer that is subject to the Workers' Compensation Law and is not self-insured must maintain assurance with the director that it provides workers' compensation insurance coverage for its subject workers through an authorized insurer, *viz.*, that it is a carrier-insured employer. ORS 656.017(1); ORS 656.005(4). To qualify as a carrier-insured employer, the employer must "caus[e] proof of coverage provided by an insurer to be filed with the director." ORS 656.407(1)(a). Concomitantly, the insurer that provides coverage for the employer is required to file proof of that coverage with the director within 30 days of the effective date of the coverage. ORS 656.419(2). When the director has reason to believe that an employer has not complied with the proof-of-coverage requirement, the director must serve on the employer a proposed order that declares the employer to be a noncomplying employer and that states the amount of the civil penalty—if there is one—imposed for the noncompliance. ORS 656.052; OAR 436-080-0010.[7] The alleged noncomplying employer may contest the director's proposed

---

[7] OAR 436-080-0010 provides, as relevant:

"If the division finds the employer is a subject employer that has failed to file proof of qualification in the manner required by ORS 656.407, as either a carrier-insured employer or a self-insured employer, the division will issue a Proposed and Final Order declaring the employer to be a noncomplying employer, and assess a civil penalty pursuant to ORS 656.735(1) for violation of [ORS] 656.052."

order in a hearing; however, the proposed order is *prima facie* correct, and the contesting employer bears the burden to rebut it. ORS 656.740(1).

Within 60 days of receiving notice of a claim for a compensable injury by a subject worker of an alleged non-complying employer, the director must refer the claim to an assigned claims agent, which is an insurer, casualty adjuster, or third-party administrator that contracts with the director to manage such claims. ORS 656.054(1), (9). The claim is then processed by the assigned claims agent "in the same manner as a claim made by a worker employed by a carrier-insured employer." ORS 656.054(1). The costs that the assigned claims agent incurs in processing the claim are reimbursed periodically by the director from the Workers' Benefit Fund. ORS 656.054(2). Further, ORS 656.054(2) provides that,

"[i]n addition to, and not in lieu of, any civil penalties * * *, all costs to the Workers' Benefit Fund incurred under [ORS 656.054(1)] shall be a liability of the noncomplying employer. Such costs include compensation, disputed claim settlements * * * and claim disposition agreements * * *, whether or not the noncomplying employer agrees and executes such documents, reasonable administrative costs and claims processing costs provided by contract, attorney fees related to compensability issues and any attorney fees awarded to the claimant * * *. The director shall recover such costs from the employer."

Therefore, the noncomplying employer is ultimately responsible for paying the costs incurred in processing a subject worker's claim against the noncomplying employer.

However, unique considerations come to bear when the alleged noncomplying employer is a client of a worker-leasing company. Under ORS 656.850(3), a worker-leasing company that leases workers to a client

"shall satisfy the requirements of ORS 656.017 and 656.407 and provide workers' compensation coverage for those workers and *any subject workers employed by the client* unless during the term of the lease arrangement the client has proof of coverage on file with the director that extends coverage to subject workers employed by the client and any

workers leased by the client. If the client allows the coverage to expire and continues to employ subject workers or has leased workers, the client shall be considered a noncomplying employer unless the worker leasing company has complied with subsection (5) of this section."

(Emphasis added.)[8] In assigning responsibility for providing coverage for the client's subject workers and for complying with the requirements imposed by ORS 656.017(1) and ORS 656.407, ORS 656.850(3) presumes that—as between the two potential employers[9]—the worker-leasing company will be the responsible employer unless the client undertakes that responsibility. Although not expressly addressed by the statute, the effect of that presumption on noncompliance determinations under ORS 656.052 is that the worker-leasing company is normally the proper employer for the director's noncompliance determination when the proof-of-coverage requirement has not been met for the client's subject workers.[10]

Here, it is undisputed that NW Staffing leased workers to On-Time, and, because On-Time had no proof of coverage on file with the director for its subject workers—much less the proof necessary to exempt NW Staffing from its coverage obligations under ORS 656.850(3)—NW Staffing was the employer responsible for providing coverage for all of On-Time's subject workers, including claimant.[11] As a result, under ORS 656.850(3), NW Staffing was responsible for complying with ORS 656.017 and ORS 656.407 for On-Time's subject workers. Consequently, NW Staffing, and not

---

[8] Under ORS 656.850(5), a worker-leasing company must notify the director in writing that the company is leasing workers to the client and is providing workers' compensation insurance for those workers.

[9] A subject employer for purposes of the Workers' Compensation Law is an "employer employing one or more subject workers in the state." ORS 656.023. Subject workers, in turn, are all workers who are subject to ORS chapter 656 except certain specified types of workers. ORS 656.027.

[10] The final sentence in ORS 656.850(3) acknowledges a specific circumstance in which the client, rather than the worker-leasing company, would be the proper employer for the director's noncompliance determination for the client's subject workers.

[11] Zurich does not contest NW Staffing's statutory responsibility to provide coverage.

On-Time, is the proper employer for the director's noncompliance determination in this case, and, therefore, the board correctly concluded that On-Time was not a noncomplying employer.[12]

---

[12] We reject DCBS's contrary view that both the client and the worker-leasing company are independently required to comply with ORS 656.017 and ORS 656.407 for the client's subject workers. As we explained in the text, ORS 656.850(3) assigns to the worker-leasing company the responsibility to comply with those statutes for its leased workers *and* for the client's subject workers

> "unless during the term of the lease arrangement the client has proof of coverage on file with the director that extends coverage to subject workers employed by the client and any workers leased by the client."

In the latter case—*viz.*, when the exception applies—the worker-leasing company is *not* required to comply with ORS 656.017 and ORS 656.407 for the client's leased or subject workers. *See* ORS 656.850(3). In other words, depending on the circumstances, the responsibility to comply with ORS 656.017 and ORS 656.407 for the client's leased and subject workers is assigned to the worker-leasing company or the client, but not to both of them.

Consistently with that principle, ORS 656.850(3) goes on to provide that, if the client rather than the worker-leasing company provides insurance coverage and allows it to expire while continuing to employ subject workers or have leased workers, then the client will be considered to be a noncomplying employer for those workers unless the worker-leasing company has given the director written notice that it is providing coverage for the leased workers. *See* ORS 656.850(3), (5). In other words, the obligation of a worker-leasing company to provide insurance coverage and comply with ORS 656.017 and ORS 656.407 for its client's leased and subject workers is superseded if the client, in fact, fulfills those requirements for those workers. If the client allows the coverage to expire and it continues to employ subject workers or have leased workers, then it will be a noncomplying employer of those workers unless the worker-leasing company has, in fact, reassumed the obligation to provide coverage for those workers and has filed the requisite documents with the director confirming the coverage.

The treatment in ORS 656.850(3) of a client that allows coverage to lapse highlights why the principle embodied in the statute makes practical sense. If the client allows its coverage to lapse, that is not something that will necessarily be communicated to the worker-leasing company. Hence, it would not be appropriate to impose noncomplying-employer liability on a worker-leasing company when there is no assurance that it would know that the client's subject and leased workers did not have coverage. Similarly, when ORS 656.850(3) imposes on a worker-leasing company the obligation to comply with ORS 656.017 and ORS 656.407 for a client's subject and leased workers, it would not make practical sense to require the client to independently fulfill the same obligation.

Finally, the singular nature of the compliance obligation is consistent with the principle that one entity—either the worker-leasing company or the client—is responsible for providing insurance coverage for all of the client's subject and leased workers. The coverage obligation—and the concomitant obligation to comply with ORS 656.017 and ORS 656.407—is not one that the two entities share.

In summary, ORS 656.850 imposes the obligation to comply with ORS 656.017 and ORS 656.407 for a client's subject and leased workers on the worker-leasing company or the client, depending on the circumstances, but not on both of them. Consequently, only one of them will be a noncomplying employer if the client has

Accordingly, we turn to Zurich's cross-petition, which raises the issue whether, because NW Staffing is the employer required to provide workers' compensation insurance coverage for claimant, Zurich, as NW Staffing's insurer, is responsible for paying the compensation due on the claim.

ORS 656.740(3) provides a mechanism by which an alleged noncomplying employer can join in a noncompliance proceeding an insurer that the employer contends has contracted to provide workers' compensation insurance for the employer's subject workers. Although ORS 656.740(3) does not expressly address whether the joined insurer is responsible for paying the claim if the alleged noncomplying employer establishes coverage, ORS 656.419(1) provides that workers' compensation insurance policies

> "shall provide that the insurer agrees to assume, without monetary limit, the liability of the employer, arising during the period the policy is in effect, for prompt payment of all compensation for compensable injuries that may become due under this chapter to subject workers and their beneficiaries."

Thus, if an employer has workers' compensation insurance coverage for subject workers for whom the employer is required to provide workers' compensation insurance, then the insurer is responsible for paying the compensation due those workers. Accordingly, the joined insurer that provided coverage for the alleged noncomplying employer assumes, under the insurance policy, responsibility for a subject worker's claim.

Here, On-Time alleged that, by operation of ORS 656.850(3), Zurich, as NW Staffing's insurer, was responsible for claimant's claim, and Zurich was joined in the proceeding. Zurich did not challenge during the proceeding or on judicial

---

subject or leased workers and the requirements of ORS 656.017 and ORS 656.407 have not been met.

Our conclusion on that point establishes, in turn, that the board did not err in awarding attorney fees against DCBS rather than Zurich because On-Time established that it was not a noncomplying employer independently of Zurich's purported failure to comply with the proof-of-coverage requirement in ORS 656.419(2)(a). Moreover, the record does not appear to support a finding that Zurich failed to comply with that statute, as required for the recovery of attorney fees against an alleged responsible insurer under ORS 656.740(6)(b).

review On-Time's contention that NW Staffing had a workers' compensation insurance policy with Zurich when claimant was injured. Therefore, because NW Staffing is the employer responsible for providing coverage for claimant under ORS 656.850(3) and Zurich, through ORS 656.419(1), has agreed to assume any liability that NW Staffing may incur as a worker-leasing company, including the responsibility imposed under ORS 656.850(3) to cover a client's subject workers, Zurich is responsible for claimant's claim, as the board correctly concluded.

Zurich's argument to the contrary—*viz.*, that, by accepting claimant's claim, Sedgwick must continue to process and pay the claim regardless of Zurich's responsibility—misses the mark. Zurich's argument rests on the assumption that, because an assigned claims agent must process a claim on behalf of a noncomplying employer as if the claim had been made by a subject worker employed by a carrier-insured employer, ORS 656.054(1), the assigned claims agent must issue a responsibility denial when an alleged noncomplying employer has insurance coverage—as an insurer would do under ORS 656.308(2)(a).[13] That assumption fails because ORS 656.740(3) governs the means by which responsibility is resolved when an alleged noncomplying employer has insurance coverage for the claim that is the subject of the proceeding. If an alleged noncomplying employer joins an insurer under ORS 656.740(3) and establishes that the insurer provided workers' compensation coverage for the employer at the time of the claimant's injury, then the insurer is responsible for the claim without the need for the assigned claims agent to disclaim its responsibility for the claim under ORS 656.308(2)(a).[14]

---

[13] ORS 656.308(2)(a) provides, as relevant:

"Any insurer or self-insured employer who disputes responsibility for a claim shall so indicate in or as part of a denial otherwise meeting the requirements of ORS 656.262 issued in the 60 days allowed for processing of the claim. The denial shall advise the worker to file separate, timely claims against other potentially responsible insurers or self-insured employers, including other insurers for the same employer, in order to protect the right to obtain benefits on the claim."

[14] If that were not the case, then an assigned claims agent would be required to issue a *pro forma* responsibility denial in every case, conditioned on whether the alleged noncomplying employer joins an insurer and proves that the insurer

Finally, we turn to whether the board had the authority to order Zurich to reimburse Sedgwick for the costs that it had incurred in processing claimant's claim. ORS 656.054 sets out a specific procedure by which an assigned claims agent is reimbursed for the costs that it has expended in processing a claim on behalf of a noncomplying employer. The director reimburses the assigned claims agent, and—subject to a noncomplying employer's right under ORS 656.054(3) to have the director audit the assigned claims agent's files to validate the correct reimbursement amount—the director is required under ORS 656.054(2) to recover the amount reimbursed, among other costs, *from the noncomplying employer*. ORS 656.054 does not give the director authority to order the insurer that is responsible for the claim to reimburse the assigned claims agent directly, nor does it give the board the authority to do that.

Rather, in the context of a responsibility determination among insurers, ORS 656.307(3) provides, as relevant, that,

"[w]hen a determination of the responsible paying party has been made, the director shall direct any necessary monetary adjustment between the parties involved. Any monetary adjustment not reimbursed by an insurer or self-insured employer shall be recovered from the Consumer and Business Services Fund."

provided coverage for the period in which the compensable injury occurred—an illogical and unnecessary requirement in that context.

Our conclusion on that point is confirmed by the applicable statutes. ORS 656.054(1) directs an assigned claims agent to process a claim "in the same manner as a claim made by a worker employed by a carrier-insured employer." That means that the agent should process the claim in the same manner as an insurer for the employer would process it. Such an insurer would *not* disclaim responsibility under ORS 656.308(2)(a) for claimant's claim because the claim is not one for which the insurer has any basis to assert that another employer, or an insurer that insured the employer for a different period, is responsible for the claim.

Finally, based on our research, our rejection of Zurich's contention appears to be consistent with the typical treatment of the assigned claims agent's acceptance of a claim while a challenge to the director's noncompliance determination is pending. *See, e.g., Michael J. Melvin*, 45 Van Natta 2405, 2406 (1993) ("Once [the insurer of the proper employer] was found to be responsible for the claim * * *, that finding effectively vacated [the assigned claims agent's] acceptance of the claim on behalf of the [noncomplying employer].").

That provision is the source of the director's authority to make any necessary monetary adjustments between the responsible insurer of an alleged noncomplying employer and the assigned claims agent for the costs that the latter has incurred in processing a referred claim.[15] Accordingly, although Zurich is responsible for claimant's claim, the board correctly concluded that it lacked the authority to order Zurich to reimburse Sedgwick for the costs that Sedgwick had incurred in processing claimant's claim.

In sum, the board correctly concluded that (1) On-Time was not a noncomplying employer; (2) pursuant to ORS 656.850(3), Zurich is responsible for claimant's claim; and (3) the board does not have the authority under ORS 656.054 to order Zurich to reimburse Sedgwick for the costs that Sedgwick has incurred in processing the claim.

Affirmed on petition and cross-petition.

---

[15] DCBS's argument that Sedgwick is merely an assigned claims agent and not an insurer for purposes of the Workers' Compensation Law, including ORS 656.307(3), is directly contradicted by the statutory definition of "insurer" in ORS 656.005(14), which is "the State Accident Insurance Fund Corporation or an insurer authorized under ORS chapter 731 to transact workers' compensation insurance in this state or *an assigned claims agent selected by the director under ORS 656.054.*" (Emphasis added.)